UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THEODORE MOSS, III,

        Petitioner,

v.                                 Case No. 3:19-cv-881-MMH-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## <u>ORDER</u>

### I. Status

Petitioner Theodore Moss, III, an inmate of the Florida penal system,

initiated this action on July 29, 2019, by filing a Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] In the Petition, Moss

challenges a 2013 state court (Duval County, Florida) judgment of conviction

for first-degree murder and armed burglary. He raises nine grounds for relief.

<u>See</u> Petition at 5-19. Respondents submitted a memorandum in opposition to

the Petition. <u>See</u> Response (Doc. 12). They also submitted exhibits. <u>See</u> Docs.

12-1 through 12-26. Moss filed a notice that he would not submit a brief in

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the
document page numbers assigned by the Court's electronic docketing system.

reply, but instead would rely on his assertions in the Petition. See Notice (Doc. 15). This action is ripe for review.

## II. Relevant Procedural History

On June 7, 2012, the State of Florida charged Moss by indictment with first-degree murder (count one) and armed burglary (count two). Doc. 12-1 at 57-58. Moss exercised his right to proceed to a jury trial, and on February 7, 2013, a jury found him guilty as to counts one and two. Id. at 124-26. On April 4, 2013, the trial court sentenced Moss to concurrent terms of life imprisonment with mandatory minimum sentences of life imprisonment on both counts. Id. at 133-40. A week later, on April 11, 2013, the trial court resentenced Moss to concurrent terms of life imprisonment with twenty-five-year mandatory minimum sentences on both counts. Id. at 148-54.

On direct appeal, Moss, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it gave: an independent forcible felony instruction (ground one); an instruction imposing a presumption of intent to commit an unlawful act involving force or violence (ground two); and conflicting instructions on the duty to retreat (ground three). Doc. 12-3 at 18-31. The State filed an answer brief, Doc. 12-4, and Moss filed a reply brief, Doc.

12-5. The First DCA affirmed Moss's convictions and sentences on February 26, 2014, Doc. 12-6 at 5, and issued the mandate on April 14, 2014, <u>id.</u> at 3.

Moss filed a pro se state petition for writ of habeas corpus raising two grounds of ineffective assistance of appellate counsel on November 17, 2014. Doc. 12-10. The First DCA denied the petition on the merits on December 10, 2014, Doc. 12-11, and later denied Moss's motion for rehearing, Doc. 12-12 at 4.

On March 8, 2016, Moss filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 12-13 at 7-12. In his Rule 3.850 Motion, Moss alleged one ground for relief: counsel was ineffective when he did not make sufficient motions for judgment of acquittal. <u>Id.</u> On May 5, 2016, the circuit court summarily denied Moss's Rule 3.850 Motion. <u>Id.</u> at 15-17. The First DCA per curiam affirmed the denial of relief without a written opinion on October 7, 2016, Doc. 12-16 at 5, and issued the mandate on January 13, 2017, <u>id.</u> at 3.

Moss has also filed four motions under Florida Rule of Criminal Procedure 3.800(a) since his convictions and sentences became final on direct appeal. Docs. 12-8; 12-17 at 5-8; 12-20 at 5-14; 12-24 at 5-10. The circuit court either dismissed or denied relief on each Rule 3.800(a) Motion. Docs. 12-9; 12-

3

17 at 9-10; 12-20 at 20-22; 12-24 at 16. The First DCA per curiam affirmed the circuit court's orders on Moss's 2nd, 3rd, and 4th Rule 3.800(a) Motions. Docs. 19 at 4; 23 at 5; 26 at 4. Moss did not pursue an appeal of the circuit court's order denying his 1st Rule 3.800(a) Motion. Response at 10.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the

Court. Because the Court can "adequately assess [Moss's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

#### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's

5

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise

7

> relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each

9

> appropriate state court (including a state supreme
> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the
> claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan
> v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality
> of a state prisoner's conviction and sentence are guided
> by rules designed to ensure that state-court judgments
> are accorded the finality and respect necessary to
> preserve the integrity of legal proceedings within our
> system of federalism. These rules include the doctrine
> of procedural default, under which a federal court will
> not review the merits of claims, including
> constitutional claims, that a state court declined to
> hear because the prisoner failed to abide by a state
> procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–
> 748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S.
> Ct. 2497. A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes federal
> review of the claims if, among other requisites, the
> state procedural rule is a nonfederal ground adequate
> to support the judgment and the rule is firmly
> established and consistently followed. <u>See</u>, <u>e.g.</u>,

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–
> 1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558
> U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417
> (2009). The doctrine barring procedurally defaulted
> claims from being heard is not without exceptions. A
> prisoner may obtain federal review of a defaulted
> claim by showing cause for the default and prejudice
> from a violation of federal law. See Coleman, 501 U.S.,
> at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may

be excused under certain circumstances. Notwithstanding that a claim has

been procedurally defaulted, a federal court may still consider the claim if a

state habeas petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d

1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that prevented
> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." McCoy v.
> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

11

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases,

12

allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some

conceivable effect on the outcome of the proceeding."
Id., at 693, 104 S. Ct. 2052. Counsel's errors must be
"so serious as to deprive the defendant of a fair trial, a
trial whose result is reliable." Id., at 687, 104 S. Ct.
2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of
any iron-clad rule requiring a court to tackle one prong of the Strickland test
before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part
Strickland test must be satisfied to show a Sixth Amendment violation, "a
court need not address the performance prong if the petitioner cannot meet the
prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243,
1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice, which we
expect will often be so, that course should be followed." Strickland, 466 U.S. at
697.

Claims of ineffective assistance of appellate counsel are governed by the
same standards applied to trial counsel under Strickland. See Tuomi v. Sec'y,
Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020); Philmore v. McNeil, 575
F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

In assessing an appellate attorney's performance, we
are mindful that "the Sixth Amendment does not
require appellate advocates to raise every non-

14

frivolous issue." Id. at 1130-31.[6] Rather, an effective attorney will weed out weaker arguments, even though they may have merit. See id. at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. See id. at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." Id.

Philmore, 575 F.3d at 1264. Thus, appellate counsel's performance is prejudicial if the omitted claim would have a reasonable probability of success on appeal. Id. at 1265.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

"[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not

_____

6 Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

15

> disturb a state-court decision denying the claim.
> <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.</u>
<u>Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the
deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds
another layer of deference — this one to a state court's decision — when we are
considering whether to grant federal habeas relief from a state court's
decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,
"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>
<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Moss alleges the trial court erred when it gave an independent forcible
felony instruction to the jury. Petition at 5; Doc. 12-3 at 21. According to Moss,
the instruction "'does not apply when it is claimed that the acts with which the
defendant is charged are themselves committed in appropriate self-defense.'"
Doc. 12-3 at 21 (citing <u>Shepard v. Crosby</u>, 916 So. 2d 861, 864 (Fla. 4th DCA
2005)). Moss contends his claim of self-defense applied to counts one and two;
therefore, no independent forcible felony warranted the instruction. <u>Id.</u>
According to Moss, the instruction deprived him of his only defense at trial. <u>Id.</u>

16

at 22. Moss argued this issue on direct appeal, id. at 21-22; the State filed an answer brief, Doc. 12-4 at 20-33; and the First DCA per curiam affirmed Moss's convictions without a written opinion, Doc. 12-6 at 5.

Respondents argue that Moss's claim is not cognizable in a federal petition for writ of habeas corpus because it concerns solely state law. Response at 25. They note Moss did not cite to any federal authority in his initial brief,[7] and state court jury instructions normally concern issues of state law Id. Respondents also assert the First DCA addressed the claim as fundamental error, which does not raise a federal claim. Id. at 26.

Upon review of the record, the Court concludes that Moss's claim in ground one is not cognizable on federal habeas review. In his initial brief, Moss argued the independent forcible felony instruction did not comply with Florida case law that defined the appropriate use of the instruction. Doc. 5-3 at 21. Moss did not allege the error violated his federal constitutional rights. Further, the record shows counsel did not object to the independent forcible felony instruction, Doc. 12-2 at 448-56, so the First DCA likely rejected Moss's claim because the instruction did not constitute fundamental error, Doc. 5-4 at 17-

---

[7] In his Petition, Moss adopts the argument presented in ground one of his initial brief in its entirety and without elaboration. Petition at 5.

17

18. See State v. Delva, 575 So. 2d 643, 644 (Fla. 1991) ("Instructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred."). "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1299 (11th Cir. 2017). Because Moss presents a state law claim, it is not cognizable on federal habeas review.

Nevertheless, even if Moss fairly presented a federal claim to the state court, he is still not entitled to relief. In its appellate brief, the State addressed the claim on the merits, Doc. 12-4 at 20-33; therefore, the appellate court may have affirmed Moss's convictions based on the argument presented by the State. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Moss is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Moss's claim is without merit. "State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." Jones v. Kemp, 794 F.2d 1536, 1540 (11th Cir. 1986); see also Wilson v. Sec'y, Fla. Dep't of Corr., No. 19-10320-C, 2020 WL 12880803, at *7 (11th Cir. Apr. 20, 2020), cert. denied sub nom. Wilson v. Dixon, 142 S. Ct. 1171 (2022). As such, on federal habeas review, the petitioner must demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (quotations omitted).

Moss challenges the following instruction:

> A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent
>
> 1.    imminent death or great bodily harm to himself or another, or
>
> However, the use of deadly force is not justifiable if you find:
>
> 1.    THEODORE MOSS was attempting to commit, committing, or escaping after the commission of Murder in the First Degree; or
>
> 2.    THEODORE MOSS initially provoked the use of force against himself, unless:

19

a. The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger, other than using deadly force on [the victim].

b. In good faith, the defendant withdrew from physical contact with [the victim] and clearly indicated to [the victim] that he wanted to withdraw and stop the use of deadly force, but [the victim] continued or resumed the use of force.

Doc. 12-1 at 99 (emphasis added). Under Florida law, the independent forcible felony instruction applies only if the State charges the defendant with an independent forcible felony other than the felony for which the defendant asserts self-defense. Martinez v. State, 981 So. 2d 449, 454 (Fla. 2008). "For that reason, Florida appellate courts have held that an instruction is erroneous if it lists the forcible felony with which the defendant is charged as the one that keys the exception which locks out self-defense." Pinkney, 876 F.3d at 1296 (citing Zuniga v. State, 869 So. 2d 1239, 1240 (Fla. 2d DCA 2004)); see also Martinez, 981 So. 2d at 453-54; Giles v. State 831, So. 2d 1263, 1265 (Fla. 4th DCA 2002). Here, Moss asserted he murdered the victim in self-defense, but

20

the trial court included first-degree murder as the independent forcible felony in the instruction. Accordingly, the trial court gave an erroneous instruction.[8]

Nevertheless, the Court finds the instruction did not render Moss's trial fundamentally unfair. While Moss contends the instruction deprived him of his only defense, the record demonstrates Moss also relied on an accidental discharge defense. During opening statements, defense counsel emphasized that Moss did not know that he shot the victim, and that the firearm's discharge occurred unintentionally. Doc. 12-2 at 64. Counsel repeated those assertions during his closing argument. Id. at 490, 493. Moreover, the trial court instructed the jury on excusable homicide, whereby "the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation . . . ." Doc. 12-1 at 90. Accordingly, the erroneous instruction did not deprive Moss of his only defense at trial.

Further, Moss did not present a credible self-defense theory. The State theorized Moss shot the victim because of a botched drug transaction during which the victim sold rabbit food, instead of marijuana, to Moss. During trial, Moss testified he approached the victim's vehicle, a blue Buick, to discuss the

---

[8] In its answer brief, the State conceded the trial court erred when it gave the independent forcible felony instruction. Doc. 12-4 at 24.

botched drug transaction with the victim. Doc. 12-2 at 315. When he arrived at the Buick, the victim opened the driver's door and cursed at him. Id. The victim reached for a gun on the side of his seat near the open door. Id. at 315-16. Moss reached for the gun. Id. at 316. The victim tried to hit Moss, so Moss hit the victim in the head with the gun. Id. Moss testified the gun discharged when he hit the victim in the head. Id. Moss dropped the gun next to the Buick and returned to his vehicle, a gold Murano. Id. at 316-17.

In contrast to Moss's version of events, Kirkland Lattimore, a resident of the apartment complex where the incident occurred, testified that when the victim arrived at the complex, Moss walked quickly to the Buick. Id. at 110. Lattimore noticed Moss had a gun when he arrived at the Buick. Id. at 90. Moss reached into the vehicle and struck the victim with the gun. Id. Lattimore then heard a gunshot. Id. at 93. As Moss ran back to the Murano, he said, "dumb-ass." Id. at 93-94. When Lattimore approached the Buick, he observed it was running and the victim still wore a seatbelt. Id. at 95.

Jessica Stapleton testified her then-boyfriend, Marquis Washington, received a telephone call from Moss on the day of the incident, April 30, 2011. Id. at 155. Moss asked Stapleton and Washington to pick him up from a "game room." Id. After they picked Moss up, they drove to a Hess gas station so

Washington and Moss could buy marijuana. Id. at 156-57. After the transaction, Moss became upset when he realized the marijuana was rabbit food. Id. at 160. They drove to an apartment complex to ask Lattimore about purchasing marijuana. Id. at 161. Shortly after they arrived at the complex, the victim drove into the complex's parking lot. Stapleton noticed Moss exit the Murano and approach the Buick. Id. at 163. She then saw "the defendant fighting and the victim not fighting back." Id. Stapleton testified when Moss returned to the Murano, he had a black gun. Id. at 164.

When law enforcement officers arrived at the scene, the victim was seated in the driver's seat of the Buick. Id. at 185, 188. The Buick's windows were closed, the driver's door was open, and the keys were in the ignition. Id. at 186. Officers found $1,134.01 in cash and a Pet Smart receipt inside the victim's shorts. Id. at 199. They did not recover a gun from the Buick, but they recovered a .45 caliber casing in the front passenger door. Id. at 218, 229. Officers also obtained the victim's cellphone records that indicated Moss called the victim multiple times on April 30th. Id. at 254-55.

The medical examiner, Dr. Valerie Rao, testified the victim had two significant injuries to his forehead and eyelids from a blunt object. Id. at 279. The victim also sustained a gunshot wound to the left side of his scalp. Id. Dr.

23

Rao opined that the gun was fired at close range based on stippling around the gunshot wound. Id. at 295-96. Dr. Rao also testified that either the blunt force injuries or the gunshot wound could have caused the victim's death. Id. at 280, 292.

In rebuttal, the State also presented the testimony of Detective Mechele Soehlig, who interviewed Moss about the murder. During the interview, Moss claimed he arranged the transaction between the victim and Washington, and Washington promised Moss would receive money for arranging the transaction. Id. at 409. Moss admitted he brought the gun to the victim's car. Id. at 414. He initially hit the victim with his fists. Id. at 413. Moss then saw the victim reach for a gun, he hit the victim in the head again, and the gun discharged. Id. 413-14.

Ernest McNeil, an inmate who knew Moss prior to both men's incarceration, testified he had contact with Moss while they were both out of custody. Id. at 428, 436. In discussing the botched drug transaction, Moss told McNeil that "he took care of his problem" and made a slashing motion across his throat. Id. at 437-38. McNeil also testified Moss was attempting to sell a black .45 caliber firearm at that time. Id. at 438-39. Given the totality of the evidence, Moss did not present a credible self-defense theory. Therefore, the

instruction did not render Moss's trial fundamentally unfair. Accordingly, even if this claim were cognizable on federal habeas review, Moss is not entitled to federal habeas relief on ground one.

## B. Ground Two

In ground two, Moss contends the trial court erred when it gave a special jury instruction that imposed a presumption of intent to commit an unlawful act involving force or violence when a person unlawfully and by force attempts to enter another person's occupied vehicle. Petition at 7; Doc. 12-3 at 23. According to Moss, the instruction confused the jury by "bootstrap[ing]" unlawful entry into a vehicle with intent to commit an unlawful act and by giving the benefit of Stand Your Ground[9] to the victim. Doc. 12-3 at 24-25. Moss argues the erroneous instruction negated his only defense at trial. Id. at 25. Moss raised this issue on direct appeal, id. at 23-25; the State filed an answer brief, Doc. 12-4 at 34-42; and the First DCA per curiam affirmed Moss's convictions without a written opinion, Doc. 12-6 at 5.

Respondents argue that Moss raises a state law claim that is not cognizable in a federal petition for writ of habeas corpus. Response at 38. They are correct. Insofar as Moss argues the trial court erred when it instructed the

---

[9] Fla. Stat. §§ 776.012, 776.013, 776.031, 776.032.

jury on a presumption that violated Florida law, his claim presents a state law issue that is not cognizable on federal habeas review. The purpose of a federal habeas proceeding is to review the lawfulness of Moss's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Coleman v. Thompson, 501 U.S. 722, 730 (1991). Thus, insofar as Moss's claim in ground two alleges the trial court erred under Florida law when it instructed the jury, such claim provides no basis for federal habeas relief. See Estelle, 502 U.S. at 67-68.

Even assuming Moss fairly presented a federal claim on direct appeal, Moss's claim is still without merit. In its appellate brief, the State addressed this claim on the merits, Doc. 12-4 at 34-42; therefore, the appellate court may have affirmed Moss's convictions based on the State's argument. If the appellate court did so, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to

26

clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Moss is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Moss is not entitled to federal habeas relief. Moss challenges the following instruction:

> A person who unlawfully and by force enters or attempts to enter another's occupied vehicle is presumed to be doing so with the intent to commit an unlawful act involving force or violence.

Doc. 12-1 at 100. The trial court derived the instruction from Florida Statutes section 776.013(4). Florida's standard jury instructions also include the instruction. See Fla. Std. Instr. (Crim.) 3.6(f).

On the record before the Court, Moss has not demonstrated the instruction rendered his trial fundamentally unfair. The instruction did not deprive Moss of his only defense at trial. As stated above in discussing ground one, Moss also raised an accidental discharge defense at trial. Moreover, the State presented sufficient evidence that Moss unlawfully and by force entered the victim's vehicle to warrant the instruction. Lattimore witnessed Moss reach inside the victim's vehicle and strike the victim with a gun. Doc. 12-2 at

27

93. Detective Soehlig testified Moss admitted to approaching the victim's vehicle with a gun and hitting the victim while he still sat inside his Buick. Id. at 413-14. Moreover, when officers discovered the victim, he was still in the driver's seat of the Buick and the driver's door was open. Id. at 185-86, 188. Given such evidence, the instruction did not render his trial fundamentally unfair. Accordingly, Moss is not entitled to federal habeas relief on ground two.

## C. Ground Three

Next, Moss alleges the trial court fundamentally erred when it gave conflicting jury instructions on the duty to retreat. Petition at 8; Doc. 12-3 at 25. According to Moss, the trial court erroneously instructed the jury on the justifiable use of deadly force, which imposes a duty to retreat unless "a reasonably cautious and prudent person would have believed that the danger could be avoided only through the use of that force." Doc. 12-3 at 26 (quotations omitted). Moss contends that the Florida statutes governing self-defense do not include the phrase, "could be avoided only through the use of that force." Id. at 26. Moss further argues the instruction confused the jury because the trial court also gave a Stand Your Ground instruction, which does not impose a duty to retreat. Id. at 29. Moss argued this issue on direct appeal, id. at 25-31; the

State filed an answer brief, Doc. 12-4 at 43-56; and the First DCA per curiam affirmed Moss's convictions without a written opinion, Doc. 12-6 at 5.

Respondents contend that Moss raises a state law claim. Response at 44. According to Respondents, the concepts of reversible error and fundamental error are issues of state law. Id. Respondents are correct. See Pinkney, 876 F.3d at 1296. To the extent Moss argues the trial court fundamentally erred when it gave conflicting jury instructions on Florida self-defense law, his claim presents a state law issue that is not cognizable on federal habeas review. See Estelle, 502 U.S. at 67-68.

Nevertheless, even if Moss fairly presented a federal claim on direct appeal, he is still not entitled to federal habeas relief. In its appellate brief, the State addressed the claim on the merits, Doc. 12-4 at 43-56; therefore, the appellate court may have affirmed Moss's convictions based on the argument presented by the State. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light

29

of the evidence presented in the state court proceedings. Therefore, Moss is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Moss's claim is without merit. Moss challenges the following instruction:

> In deciding whether defendant was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used. The danger facing the defendant need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that <u>a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force.</u> Based upon appearances, the defendant must have actually believed that the danger was real.

Doc. 12-1 at 100. Initially, the Court notes that the Florida Supreme Court has determined the instruction used in the instant case "accurately and correctly" explains the duty to retreat "with regard to the factually complex situations where the jury must unwind the facts to determine who was the initial aggressor." State v. Floyd, 186 So. 3d 1013, 1020-21 (Fla. 2016). It has also held that the organization of the justifiable use of deadly force instruction and the Stand Your Ground instruction is not confusing. Id. at 1021.

30

The instruction did not erroneously impose a duty to retreat on Moss. Rather, the paragraph following the contested instruction explains that Moss had no duty to retreat if he was in a place that he had a right to be and was not engaged in unlawful activity. Doc. 12-1 at 100. Further, for the reasons stated in rejecting ground one, the Court finds the instruction did not render Moss's trial fundamentally unfair. Accordingly, Moss is not entitled to federal habeas relief on ground three.

### D. Ground Four

As ground four, Moss contends appellate counsel was ineffective when he failed to raise on direct appeal the claim that Moss's resentencing violated double jeopardy. Petition at 10; Doc. 12-10 at 5. According to Moss, the trial judge initially sentenced him to concurrent terms of life imprisonment with mandatory minimum terms of life imprisonment for counts one and two. Doc. 12-10 at 5. Moss asserts that the State filed a Florida Rule of Criminal Procedure Rule 3.800(b) Motion, requesting the trial judge impose mandatory minimum sentences pursuant to Florida Statutes section 775.087(2)(a)3. Id. According to Moss, the trial judge subsequently held a resentencing hearing and imposed twenty-five-year minimum mandatory sentences for counts one and two. Id. Moss argues his appellate counsel should have asserted that the

31

imposition of the minimum mandatory sentences violated the principle of double jeopardy. Id. at 6. Moss raised this issue in a state petition for writ of habeas corpus, id. at 5-7, and the First DCA denied Moss's petition on the merits, Doc. 12-11 at 2.

As there is a qualifying state court decision, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Moss is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Moss's claim is without merit. "Resentencing violates the double jeopardy clause only when it disrupts the defendant's legitimate expectations of finality." United States v. Young, 953 F.2d 1288, 1291 n.3 (11th Cir. 1992). The Florida Supreme Court has determined that when a trial court fails to pronounce a nondiscretionary minimum mandatory sentence, the

defendant has no legitimate expectation of finality in that sentence, "at least until the reviewing court has issued a mandate or the time for filing an appeal has run." Dunbar v. State, 89 So. 3d 901, 906 (Fla. 2012). As a result, the later addition of a minimum mandatory sentence pursuant to Florida Statutes section 775.087 ("the 10-20-Life statute") does not violate double jeopardy. Id. at 904.

Here, the record demonstrates the trial judge resentenced Moss because he did not consider the jury's specific findings and impose minimum mandatory sentences within the range mandated by the 10-20-Life statute.[10] Doc. 12-1 at 145, 204-05. The trial judge also resentenced Moss before the expiration of the time to file an appeal.[11] Such a resentencing does not violate double jeopardy. See Dunbar, 89 So. 3d at 906. Therefore, appellate counsel was not ineffective for failing to raise a meritless issue on appeal. Shere v. Sec'y, Fla. Dep't of Corr., 537 F.3d 1304, 1311 (11th Cir. 2008). Accordingly, Moss is not entitled to federal habeas relief on ground four.

---

[10] Section 775.087(2)(a)3 provides if the convicted person discharged a firearm causing death or great bodily harm during the commission of a qualifying offense "the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison." (emphasis added).

[11] The trial judge sentenced Moss on April 4, 2013, and resentenced him on April 11, 2013. Docs. 12-1 at 133-40, 148-54

### E. Ground Five

In ground five, Moss contends his sentence is illegal because the trial judge granted the State's Rule 3.800(b) motion and resentenced him to twenty-five-year minimum mandatory sentences for counts one and two. Petition at 12; Doc. 12-8 at 2-3. Moss argues the State can only file a Rule 3.800(b) motion to correct a sentencing error that would benefit a defendant; therefore, the trial judge improperly corrected his sentences based on the State's Rule 3.800(b) motion. Doc. 12-8 at 3-4. Moss raised this claim in his 1st Rule 3.800(a) motion filed on April 14, 2015. Doc. 12-8. The state court denied the motion, Doc. 12-9 at 2, and Moss did not appeal the court's order.

Respondents argue Moss has failed to exhaust state remedies as to this claim, and as such, the claim is procedurally defaulted. Response at 54-55. The record before the Court establishes that Moss has not exhausted his state remedies as to this claim because he failed to raise the claim in a procedurally correct manner. Moss has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. As such, the claim in ground five is procedurally barred.

Nevertheless, even if his claim was not procedurally barred, Moss is still not entitled to relief. Insofar as Moss argues the trial court did not correctly apply Rule 3.800(b), his claim presents a state law issue that is not cognizable on federal habeas review. See Estelle, 502 U.S. at 67. Therefore, Moss is not entitled to federal habeas relief on ground five.

## F. Ground Six

Next, Moss alleges counsel was ineffective when he made insufficient motions for judgment of acquittal. Petition at 16; Doc. 12-13 at 7. According to Moss, counsel should have argued that the State presented only circumstantial evidence that Moss murdered the victim with premeditated intent. Doc. 12-13 at 10. Moss raised a similar claim in state court as the sole ground of his Rule 3.850 Motion. Doc. 12-13 at 7-12. In denying relief, the circuit court explained:

> In his Motion, the Defendant claims that counsel rendered ineffective assistance in that counsel failed to move for a judgment of acquittal. The record rebuts this allegation. The record of the court docket establishes that on February 7, 2013[,] the Defendant made and renewed his Motions for Judgment of Acquittal. [Exhibit A][12]
>
> Accordingly, this Court finds the defendant has not established error on the part of counsel that prejudiced his case. Strickland, 446 U.S. [at] 668.

---

[12] Doc. 12-13 at 18-30.

Doc. 12-13 at 16. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 12-16 at 5.

The state circuit court's decision suggests the state court may have misunderstood the claim that Moss raised in his Rule 3.850 Motion. Moss alleged that counsel "was ineffective for failing to <u>adequately</u> move for a judgment of acquittal." Doc. 12-13 at 7 (emphasis added). The state court appears to have considered the claim as if Moss alleged counsel failed to move for a judgment of acquittal entirely. Doc. 12-13 at 16. In denying relief, the state court did not assess the adequacy of the motions, but merely attached a copy of the docket sheet as an exhibit to establish that counsel had moved for a judgment of acquittal. <u>Id.</u> at 18-30. In light of the fact that the state court's denial of relief appears to have rested only on its determination that counsel was not ineffective because he had moved for a judgment of acquittal and because the First DCA did not provide a written opinion, the Court presumes the First DCA affirmed the denial of relief based on the state court's finding. <u>Wilson</u>, 138 S. Ct. at 1192. However, based on the above, it does not appear as if deference should be owed to this adjudication.

Nevertheless, under a <u>de novo</u> review, Moss is not entitled to relief because he cannot demonstrate prejudice. <u>See</u> <u>Berghuis v. Thompkins</u>, 560

U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in <u>de novo</u> review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on <u>de novo</u> review."). The State presented ample evidence of premeditation at trial. Witness testimony provided a motive for Moss to shoot the victim based on the botched drug transaction. Doc. 12-2 at 160, 409, 437-38. Moss's cell phone records reflect that he made multiple calls to the victim throughout the day. <u>Id.</u> at 255. Moss last called the victim at 3:31 p.m. <u>Id.</u> According to witness testimony, the shooting occurred sometime after 4:00 p.m. <u>Id.</u> at 85-86. A resident of the complex testified before he heard the gunshots that day, a loud, angry male voice yelled, "There he is right there." <u>Id.</u> at 141.

According to Detective Soehlig, Moss admitted to carrying a gun when he approached the victim's Buick to discuss the botched drug transaction. <u>Id.</u> at 414. Moreover, after Moss shot the victim, Lattimore heard Moss say, "dumb-ass." <u>Id.</u> at 93-94. The State argued Moss's comment demonstrated his intent to murder the victim. <u>Id.</u> at 500. Such evidence could certainly support a conclusion that Moss had premeditated intent to shoot the victim.

The Court also notes that after denying the defense's initial motion for judgment of acquittal, the trial judge stated: "I believe there was enough evidence in the record where a proper inference could be drawn and I was prepared to deny the Motion for Judgment of Acquittal based on that since I draw that inference in favor of the state." Doc. 12-2 at 300-01. Even if counsel had made Moss's proposed argument, the trial judge would not have granted the motion. Therefore, counsel's alleged failure to make sufficient motions for judgment of acquittal did not prejudice the defense. Accordingly, Moss is not entitled to federal habeas relief on ground six.

## G. Ground Seven

In ground seven, Moss contends his sentence is illegal because he received twenty-five-year mandatory minimum sentences pursuant to the 10-20-Life statute without specific jury findings. Petition at 16; Doc. 12-20 at 7. Moss asserts the jury never found that he actually possessed a firearm during the commission of the offense. Doc. 12-20 at 8-9. According to Moss, the trial court could not impose the mandatory minimum sentences without a jury finding he actually possessed a firearm. Id.

38

Moss raised this claim in his 3rd Rule 3.800(a) motion filed on January 4, 2018. Doc. 12-20 at 5-14. The state court denied the motion, stating in pertinent part:

> In the instant Motion Defendant argues his sentence is illegal and wants correction. The record does not support Defendant's allegation that his sentence is illegal.
>
> On February 7, 2013, Defendant was found guilty by [a] jury of First Degree Murder and Armed Burglary. On April 4, 2013, after a full hearing, Defendant was adjudicated guilty and the trial court sentenced him to life without parole with the life minimum mandatory imprisonment provisions of section 775.087(2)(a), Florida Statutes. On April 5, 2013, the State filed a motion to correct sentence. On April 11, 2013, Defendant's sentence of April 4, 2013[,] was vacated and set aside per oral court order. Defendant's sentence was corrected and modified. Defendant was sentenced to life without parole. It was further ordered that the twenty-five (25) year minimum mandatory imprisonment provisions of section 775.087(2)(a), Florida Statutes, imposed for Count One and Count Two, be concurrent for each count. A notice of appeal was filed and on April 14, 2014, the First District Court of Appeal issued a mandate affirming Defendant's sentence and conviction. The record reflects Defendant [was] properly sentenced.

Id. at 20-21 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 12-23 at 5.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Moss is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Moss's claim is without merit. Moss appears to raise a claim that his sentence is illegal because the jury did not find a fact that increased his sentences for counts one and two in violation of <u>Alleyne v. United States</u>, 570 U.S. 99 (2013). To impose the twenty-five-year minimum mandatory sentence pursuant to section 775.087(2)(a)3, a defendant must have "discharged a 'firearm' . . . and, as the result of the discharge, death or great bodily harm was inflicted upon any person." Here, the indictment charged Moss with first-degree murder, specifying in pertinent part:

> [D]uring the commission of the aforementioned Murder in the First Degree the said THEODORE

> MOSS carried or had in his possession a firearm, and during the commission of the aforementioned Murder in the First Degree the said THEODORE MOSS did discharge a firearm and as a result of the discharge, death or great bodily harm was inflicted upon any person, contrary to the provisions of Section(s) 782.04(1)(a) and 775.087(2)(a)(3) Florida Statutes.

Doc. 12-1 at 57. The indictment similarly charged Moss with armed burglary Id. The jury found Moss guilty of counts one and two "as charged in the Indictment," with a special finding that Moss "discharged a firearm causing death or great bodily harm during the commission of the offense." Id. at 124, 126. Therefore, Moss's convictions and sentences complied with Alleyne.

To the extent Moss asserts that his minimum mandatory sentences are illegal because the jury did not find he actually possessed a firearm during the offenses, such a claim is without merit. The State did not pursue a principal theory during trial, and the evidence demonstrated Moss actually possessed and discharged a gun. Accordingly, Moss is not entitled to federal habeas relief on ground seven.

### H. Ground Eight

Moss also contends his sentence is illegal because it contains a discrepancy between the oral pronouncement and the written judgment and sentence. Petition at 18; Doc. 12-24 at 7. Moss alleges the trial judge sentenced

him for armed burglary with battery. Doc. 12-24 at 7. However, according to Moss, the jury did not find him guilty of armed burglary with battery, only of armed burglary. Id. Moss raised this claim as ground one of his 4th Rule 3.800(a) motion filed on November 5, 2018. Doc. 12-24 at 7. The state court dismissed the motion, id. at 16, and the First DCA per curiam affirmed the state court's order without a written opinion, Doc. 12-26 at 4.

Respondents argue that Moss's claim is not cognizable in a federal petition for writ of habeas corpus because it concerns solely a state law issue. Response at 69. According to Respondents, the sentencing documents include references to Florida Statutes section 810.02(2)(a) because of the State's abandoned theory that Moss battered the victim during the burglary's commission. Id. As such, they assert Moss requests the correction of a scrivener's error. Id. at 68.

Moss's allegation of a discrepancy between the oral pronouncement of his sentence and the written judgment and sentence does not involve a question of federal law. Moss neither identified in ground one of his 4th Rule 3.800(a) motion, nor in his Petition, the manner in which the discrepancy violates his federal constitutional rights. Therefore, his claim is not cognizable on federal

habeas review. <u>See</u> <u>Estelle</u>, 502 U.S. at 67 (1991). Accordingly, Moss is not entitled to federal habeas relief on ground eight.

## I. Ground Nine

Last, Moss alleges his sentence is illegal because it violates double jeopardy. Petition at 19; Doc. 12-24 at 7. Moss contends the trial court filed a corrected judgment and sentence that identified the relevant statutory subsections for count two as Florida Statutes sections 810.02(2)(A) and 810.02(2)(B). Doc. 12-24 at 7. According to Moss, the subsections identify the offenses of armed burglary with an assault or battery and armed burglary with a dangerous weapon. <u>Id.</u> Moss argues the imposition of a sentence for both offenses violates double jeopardy because the charges require the same elements and involve a single criminal episode with one victim. <u>Id.</u> at 8-9.

Respondents argue Moss failed to exhaust his state remedies as to this claim, and as a result, this claim is procedurally defaulted. Response at 71, 73. In support, Respondents assert Moss raised the instant claim in his 4th Rule 3.800(a) motion that the state court dismissed because it did not have jurisdiction to consider the claims while the appeal of Moss's 3rd Rule 3.800(a) motion was pending. <u>Id.</u> at 72. They further assert that even if Moss raised his claim after the disposition of his appeal, the state court would have dismissed

43

it because double jeopardy claims are not cognizable in Rule 3.800(a) motions. Id. at 72.

Upon consideration of the record, the Court concludes that Moss's claim has not been exhausted because Moss failed to raise the claim in a procedurally correct manner. Moreover, since Moss failed to raise the double jeopardy claim in his Rule 3.850 motion and any subsequent motion would be untimely, he cannot cure the default. Moss has not shown either cause excusing the default or actual prejudice resulting from the bar. Further, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. As such, the claim in ground nine is now procedurally barred.

Even assuming this claim is not procedurally barred, Moss is not entitled to relief. The Eleventh Circuit has stated:

> "The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be 'subject for the same offence to be twice put in jeopardy of life or limb.'" Jones v. Thomas, 491 U.S. 376, 380, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989) (quoting U.S. Const., amend. V). In addition to protecting against multiple prosecutions for the same offense, the Clause also prohibits "multiple punishments for the same offense imposed in a single proceeding." Id. at 381, 109 S.Ct. at 2525 (internal quotation marks omitted).
>
> In the context of multiple punishments, the purpose of double jeopardy is simply to "ensur[e] that the total punishment did not exceed that authorized

44

by the legislature." Id. (quoting United States v. Halper, 490 U.S. 435, 450, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989)); Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983) ("[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). [] Therefore, in enforcing the federal double-jeopardy guarantee, we "must examine the various offenses for which a person is being punished to determine whether, as defined by the legislature, any two or more of them are the same offense." United States v. Dixon, 509 U.S. 688, 745, 113 S.Ct. 2849, 2881, 125 L.Ed.2d 556 (1993). In effect, we ask whether the offenses are "sufficiently distinguishable to permit the imposition of cumulative punishment." Id. at 745, 113 S.Ct. at 2881–82 (quotation marks omitted). Where no clear legislative intent has been expressed, we apply the "same-elements test" of Blockburger, which provides that two statutes are not the "same offense" for purposes of double jeopardy if "each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304, 52 S.Ct. at 182.[13]

Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 703-04 (11th Cir. 2015) (per curiam) (alterations in original) (footnote omitted).

Moss's convictions do not violate double jeopardy. A jury found Moss guilty of first-degree murder and armed burglary. Doc. 12-1 at 124-26. The trial court sentenced Moss for both counts. Id. at 148-54. First-degree murder and armed burglary each require proof of facts which the other does not. Fla. Stat.

---

13 Blockburger v. United States, 284 U.S. 299 (1932).

45

§§ 782.04(1)(a)1, 810.02(2)(a)-(b). While both counts arose from the same incident, Florida courts have found "sufficient intent that the legislature intended multiple punishments when both a murder and a felony occur during a single criminal episode." State v. Enmund, 476 So. 2d 165, 167 (Fla. 1985); see also Fallada v. Dugger, 819 F.2d 1564, 1572 (11th Cir. 1987) (finding that a defendant can be convicted of both felony murder and the underlying felony). Accordingly, for all of the foregoing reasons, Moss is not entitled to federal habeas relief on the claim in ground nine.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Moss seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Moss "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell,

537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

47

3.      If Moss appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of May, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9

C:      Theodore Moss, III, #J49547
        Counsel of record

48